First place is Tejal Ravi et al. v. United States, 2022, 1559. Ms. Lathamson, please proceed. Your Honors, we are here today to determine if the Tucker Act provides this court jurisdiction over a contract for educational services made by the government during an undercover law enforcement operation. Well, you just indicated it was a law enforcement agent activity. It wasn't a contract for renting a building, for example. It's a law enforcement activity. It's not proprietary. Well, it's a contract for educational services. There was an offer of admissions to a university, which was accepted by my clients. I was at a credited university. My client was only told that it was a legitimate university that would be offering classes, and that's what my client anticipated, and that's what he paid tuition for. So, on its face, this is a proprietary contract, and that's how it is determined. So, for example, within the language of the sentence from Tanya that's been quoted, this is something that a private party could easily do. A real university could make this contract with a real potential student, and the fact that this is being done in a false pretenses way for law enforcement purposes doesn't change the nature of the contract. That's your view, I take it. Yes, exactly. And in our briefing, we analyzed the Sovereign Capacity Doctrine, but we recognize that this Court has never adopted the Sovereign Capacity Doctrine. The Tucker Act already has the money mandating requirement, requiring jurisdiction for non-monetary government contracts, and illegal contracts are already unenforceable in this Court. Ms. Nathan, let me ask, ladies and gentlemen, excuse me for jumping in on you there, but let me ask you if I could a question, please. You're urging us to reverse the decision of the Court of Federal Claims and to remand the case to the Court for further proceedings, correct? Yes, Your Honor. And as I understand it, you're asking for proceedings to proceed on the breach of contract claim, correct? Yes. Third point. I read in page 10, I think, of your reply brief. You state that if – we have to assume for purposes of these proceedings that Mr. Ravi is innocent, had innocent intent, correct? Yes. But you concede at page 10 of your reply brief that if, in fact, he was willingly participating in a, quote, pay-to-stay scheme, that he would not be able to recover, right? Yes. Is that the time and formation of the contract? How would this issue, if we were to remand it on the contract claim, how would this issue of his state of mind be thrashed out in the Court of Federal Claims? Testimony, affidavits? Yes. Testimony and affidavits. I think it's also a key factual question what he had knowledge of. Was he ever told that this was a fake university that would not be offering – or not even that it was a real university that he would not – that he would be in a pay-to-place scheme for? And he was not. But that's the factual question that we're asking to reverse and remand to the Court. You know, if he had knowledge that this was an illegal contract, illegal contracts are already unenforceable in court. So that's how you determine that case. But we're asking to be reverse remanded to that factual issue that we have raised material facts in dispute. That would have to be determined on remand. Yes. Yes, Your Honor. Counsel, let me just ask you a housekeeping question. In the appendix, there are a lot of blacked-out portions indicating that they're confidential. Can we assume that that which is not blacked out is not confidential? It was still submitted as a confidential appendix. So – That indicates that some of the material in it is confidential. And isn't that – that which is blacked out, the rest of it not being confidential? Yes, Your Honor. I would agree with that handling of it by this Court. So in other words, we can assume that anything that is not blacked out is not confidential, correct? I believe the Court should handle it that way. Okay. Since the Tucker Act already has the non-monetary – already has the money mandating requirement and illegal contracts are already unenforceable, this Court may find that the sovereign capacity doctrine is unneeded. Well, why do you call this thing the sovereign capacity doctrine? When I search those terms on Westlaw, it doesn't exist in Supreme Court case law. That three-word phrase doesn't exist in any precedent of our Court. There are, rather, some references to the word sovereign. This is not the sovereign acts doctrine, which is the Winstar Doctrine. So, you know, this three-word phrase seems to have been given as a label to – as if it were some long-standing doctrine with an understandable definition, which I don't really see. Conway said some things about it, and Blumker came in right behind it, and Sanders talked about it, and Judge Allegra's opinion, and Stovall talks about it. But the it here is just a set of cases, virtually, if not all of which, are about contracts, the subject matter of which is what would or couldn't or won't happen in a criminal proceeding, motivated by the idea that when there's such a contract, it's the criminal court that is to supply the remedies, not the Court of Federal Claims, in the absence of some pretty clear provision in the contract. And we don't have that at all, and it would be a little hard to see how you have that when neither contracting party owns up to being the government. Well, I think you're exactly right. It doesn't clearly exist, and maybe I shouldn't have referred it to that way. But this sovereign versus proprietary analysis, it's not clear that the court even needs to make that. So that's what I'm gesturing towards. Many of the cases have to do with criminal settlements, plea bargains in criminal cases, or the civil analog of that, which is a settlement agreement between the government when it's bringing a civil enforcement action against a party, and that there's no monetary exchange in those contracts. And there's also already a court, a civil court, or a criminal court involved, which is better suited to take jurisdiction over those contracts. Are you familiar with the Silva case? Yes. Yeah, so obviously that's not a precedent of our court. But nevertheless, can you talk a little bit about that case? I know the opinion in the claims court, it's a slightly complicated situation, and among the things that the claims court opinion does is refer to two remedies, one I think in habeas, one under Criminal Rule 41, for the breach of that assumed contract there. But that wasn't quite a contract about, or was it, about what would happen in a criminal proceeding. It was not. What I find important about Silva is that it was a facially illegal contract. So Silva is a contract where Silva knows he is illegally importing birds, and he makes a contract to breed birds. And breeding illegally imported birds is also illegal. So when he makes that contract, he knows he's contracting for something illegal, and then he later pleads guilty to illegal importation and conspiracy. But yes, when the court's looking at that, they consider that there was a criminal investigation and prosecution of Mr. Silva, and that there was a comparable remedy available in a criminal proceeding for him to pursue what would be the contract issue. So that goes into their reasoning. While there's no criminal case or civil case here for Robbie, he goes before the court here or he goes before the court nowhere. Let me ask you, you were discussing with Judge Toronto the existence or nonexistence of the so-called sovereign capacity doctrine. Let's assume for the moment that one would say the undercover operation here involving the University of Farmington, an Operation Paperclip, was something, the government acting in its sovereign capacity. But what I understand you to say is that, okay, assume that's the case, I can still, meaning your client, carve out of that this contract between the University and Mr. Robbie. Is that correct? I agree that that's one way this court could find a situation. I also don't think that the contract was taken in a sovereign action of the government. I think that really goes beyond any of the cases that the lower court has considered before. Because this wasn't a settlement agreement in a civil enforcement matter. This wasn't a plea bargain in a criminal matter. It was just an educational contract taken during... How do you address the government's argument that, okay, the government never had, the government agents, the people at the university, never had the intention of providing educational services. Whereas assuming Mr. Robbie wanted such services, the government said, there's no meeting of the minds. What is your response to that? Yes, so of course neutrality of intent is the first element of contract formation. To show neutrality of intent, the plaintiff must show objective evidence, the existence of an offer, and reciprocal acceptance, see Anderson and Seuss. This is a black letter contract law principle. Here we have the classic objective evidence, a written contract, a written offer, and acceptance of that in a documented tuition payment. And I can get into the sites of the offer of admission. Let's assume that on its face, you know, a third-party bystander would look at this and say, this is an express contract. Absolutely clear. All the words coming out of the two parties' mouths are, if you pay me $12,000, then in the firm you'll get classes. How could that not be a contract? Is there either a restatement or restatement of second of contracts or something, or a case law generally that would support the idea, which I take it to be the government's idea, that when one party has its fingers crossed behind its back, fully intending never to keep its side of the overt express bargain, that there's no mutual intent to contract? There is not. And, you know, actually the government already has a different protection in this area, specifically for Tucker Act claims, which is the fifth element of authority. And I assume on that, your position is that the agent, the particular agents had authority from the very top, wherever that top is, to do exactly what they did, which is to pretend that they were entering into a commercial contract. Yes. There was express actual authority, we plead, and also there would have been ratification as well, because from the top to the bottom, everyone knew what was going on with this, and there was the language repeatedly in the operation. The whole point of the project, authorized from the top, was in fact to pretend to have, in a convincing way, an offer of educational services for which they were going to collect money? Yes. And the authorization papers explicitly authorize establishing a proprietary corporation or business entity and operating them on a commercial basis. When we're into rebuttal time, you can use it or save it. I will save it if there's no further questions. Mr. O? May it please the Court. I'll start with Judge Toronto. Your question about the verbiage, sovereign capacity doctrine, I briefly tried to look through the cases to see the first instance I saw it mentioned. I did see it in Trudeau. When I did last night, that's the first time I saw that three-word combination, which is not us. It's not, right. But it was affirmed by this Court, that decision in Rule 36. Right. What we do is lots of affirmances on particular facts without, and that one, I don't remember the facts, but was that also a classic agreement about what would go on or would not go on in a criminal proceeding? That was a civil enforcement of a FTC agreement. Okay. So it was civil. So it was submitted to civil instances. Okay. An interesting case might be Awad, where that was an allegation that the government had promised to provide passport documents, some types of citizenship papers for assisting in some terrorist, you know, investigation. In any event, in terms of governing precedent, Supreme Court or us, the labels are not important. I just wanted to push back on the idea that by giving it this name, we were giving it a foundation and a stature and an established character that I think goes well beyond what is in cases that are precedent for us. So I think the two cases that this Court would treat as binding would be, number one would be Kaniyia and the second would be Sanders. Right. So whether, you know, that. . . Those are all about the fact that these were agreements about what was going to go on in a criminal proceeding, either immunity or plea bargain or stuff like that, in which the criminal court is presumed in the absence of special country language to be the only one to be dealing with that contract. Right. And you agree we don't have that here. I don't have that, but I think the line it drew has been addressed in a variety of circumstances since then. The trial court has addressed it. You know, Trudeau was affirmed. Silva was affirmed by this Court. Granted, those weren't published decisions, but in my mind I would think that that's because the lines they were drawing were consistent with the lines that Kaniyia and Sanders drew with respect to how broadly the sovereign capacity doctrine covers. . . I assume you would take issue with Judge Allegra's extensive discussion about this in Stovall, which says the government has been taking this particular set of cases and expanding it to some general notion about actions taken in the service of some sovereign function are outside the Tucker Act. I think that's right generally. I mean, it would depend, right. . . And I say in Judge Allegra's ruling saying that's actually wrong. I think that the line that Kaniyia drew was between proprietary and sovereign actions, and I think that's a workable line. So why is this not a proprietary action? The government says I want to sell you some education. Give me your money. They say, hey, we got a deal. And the government takes the money. Could have been this contract could easily have been from a real educational institution. There's nothing about that. It's just that underlying this pretense is a sovereign interest in law enforcement. I don't think we've ever gone that far. It's the most closely analogous case this Court will find will be SILFA, which is why we highlight it in our brief. But I think the fundamental question about how to understand the doctrine is it all comes down to government purpose, right. What purpose is the government doing the thing that you are alleging. . . What's the purpose of the government, you know, renting a building for its law enforcement operations? That would be. . . So that would fit under Bailey. You get the Sovereign Act, which is a government undercover law enforcement investigation. What Bailey says is even within that sovereign action, with the government acting in a sovereign capacity, you can have a proprietary contract. Why is this not that? Because this wasn't the government's purpose to actually engage in the process of providing, you know, these individuals with an actual education for, you know. . . On the facts, we have to assume he didn't know that, Mr. Ravi. On the facts, we have to assume he thought he was paying thousands of dollars for classes he was about to take. So what I would say to that is with respect to the sovereign capacity doctrine, it's essentially agnostic to what the party on the other side thinks. It all comes down to what the government on the other side thinks. But that's if there is such a thing as a sovereign capacity doctrine that goes so far as to say it's all about purpose. And I just don't see that. And it's extremely troubling, right? The government gets to pretend that it's offering a service and collects money from presumptively an innocent and says, we keep the money. Can I address that? Please. I understand that general concern about the fundamental rightness of a position the government's taking. What I will say is the trial court's holding here was exceedingly narrow under, and I'll use this shorthand whether we agree with the verbiage or not, that the sovereign capacity doctrine says for this kind of thing, you can't seek redress in the court of federal claims under a breach of contract theory under the Tucker Act. That's all it said. It was a very narrow holding. That doesn't mean there's not some right to redress somewhere else. Where? Judge Taranto, you mentioned yourself. Where? Whatever cases under rule of law. Can you answer my question? Yeah, yeah. Where? Rule 41, you go to district court and you say. You can't do that, can you? I don't know. That's a criminal rule. There's no criminal proceeding. It's never been. There was a case called Mantilla. There's a case called Cardo where – or actually, Cardo might be a good decision. In the Ninth Circuit, we cited in our trial brief where the individual was deported as a result of, you know, trying to get fake visa papers. And that was brought as a rule 41 case, my understanding. Counsel, is it correct that he didn't attend classes? They didn't attend classes. Because he knew it was not a genuine contract for university services? Again, that was part of the operation. The average student participating in this university participated for 1.6 years. There was a reason why there was that long of a time lapse before the government actually began the process of arresting individuals. Because by that point, after a succession of tuition payments, which were collected on a quarterly basis, you had to know. You haven't gotten classes. You haven't gotten a schedule. You haven't gotten a transcript. But you've gotten CPT papers and F-1 visa papers. You must know by this point it was. These sound like factual. Those are factual. Factual arguments that have not been adjudicated, even on summary judgment. And I guess the only reason I'm mentioning them, Judge Toronto, is because. Well, you asked. Yeah, I know. But there's a broader concern about, you know, well, what if, you know, individuals who were truly unwitting were caught up in the operation? But doesn't that suggest that, in fact, very, very few people will be able to recover? Because if you're right in your suggestion, almost everybody here is not going to be innocent. Presumably, yes. But what I will say is that the Sovereign Capacity Doctrine, the reason why we're pressing that argument, is because that's what this Court held in Kenia, what it reinforced in Sanders, and the progeny suggests that cases like this would be covered under that doctrine. And if the Court is concerned about, I think, the equitable or consequentialist views of, like, what might come down the line if we were to continue to draw that line, then do something like the Court did in Awad, which is, look, there could be sympathetic circumstances where this kind of case might arise, but it's just not properly. I think I'm probably repeating myself. But we are not in the position of having a clear, established set of cases binding us that cover this and then asking, oh, is it fair? You are asking us to extend anything that we have actually held in a precedential opinion. And so put aside what the Claims Court has done, and the cases are quite mixed, like Stovall on one side saying the government has been aggressively pushing this, that's wrong, and some other Claims Court judges picking up on some of the ideas in a particular context. But in our effort to figure out how broad a principle there is that we should bless, it's not just that the policy consequences seem relevant to that. I think if you break Kaniyia down to its bones, it drew a proprietary sovereign distinction line. We think all that this Court would be doing is reaffirming that line within this particular case. So the trouble is that that can mean different things. In your view, it means what is the purpose? I'm not quite sure. The government's purpose. The government's purpose. Right. I'm not sure quite even what the boundaries of that are. But another way, and indeed I think maybe even the fairer way to read the crucial sentence in Kaniyia, is about the nature of the particular act. Is it one that a private party, that two private parties could engage in? And if you look at that's proprietary and not if it's sovereign. And if you look at that way, this falls on Mr. Robby's side of the line. And now on your side of the line, because private companies, universities, can offer educational services. Well, Judge Toronto, just going back to the main point. I think what Kaniyia said was if it's always focused on the government, what was the government doing? If the government was acting in its sovereign capacity, look, I understand it's not a totally satisfying answer to you, Judge Toronto. But, again, that's the line we would draw. And what we would say, and I just say this to the rest of the panel, is adopting that line here isn't an extension of prior authority. Mr. O'Leary would agree that we have to assume here, for purposes of this case, that Mr. Robby was innocent. Correct? It's based on we have to go based on what's in the complaint. Now, I realize the government disputes that point. Yes. Fair enough. But for purposes of deciding this case, we have to look at Mr. Robby as being innocent, coming in and saying, I want educational services. Correct? That's correct. You take the pleading on its face. What I will add is that the sovereign capacity doctrine, as I said to Judge Toronto, is agnostic to the government. Well, why couldn't the – well, my view, I think, is that, yes, there is a sovereign capacity doctrine. The government acts, even though it hasn't been articulated such, certainly the government acts in its sovereign capacity when it sets up an undercover operation like this. No question about that. But in that overarching context, you know, could you not have a valid contractual arrangement entered into under the basic laws of contract formation? Restatement, Williston on contracts, offer and acceptance. In taking an innocent person, Mr. Robby comes in and says, I want educational services. The folks at the University of Northampton – Fairfax University. Farmington. Farmington. Farmington. They say, okay, here's your online services. Now, isn't that – hasn't the contract been formed for the providing of educational services? I would say that's arguably a contract, but it's not a Tucker Act contract, because what the sovereign capacity doctrine says is that when the government is acting in a sovereign capacity – and, again, this is one example of that. It's not the government obligating itself to provide monetary damages, binding itself in a way that no normal party would do in a commercial transaction. The fundamental purpose of that agreement would be the government acting for the purpose of effectuating an undercover investigation. Let me ask you this. I realize the government – do you agree with the discussion that we had with Mr. Robby's counsel that if we were to reverse and remand, the focus would have to be on whether there was a valid contract and what was the state of Mr. Robby's mind, correct? That would be one of the issues that would have to be addressed by the court, correct. Mr. Robby acknowledges, if I had ill intent, I can't recover. Correct. He recognizes that. So you would have this thrashing out of the facts. But my question is, what is the situation? I gather from the affidavits – it was the Weber affidavit and the other affidavit from ICE – that there were a few folks who the government acknowledges came forth innocently looking for educational services. What was your answer to them? They paid money with no ill intent and they can't get – what is the relief for them? Can I clarify one point? Yes. I don't know that people came forward necessarily innocently. All we know is that some people came in and said, you know, I don't want to do this. And what the government did in that instance factually was they referred them to actual – Is there anybody who, as far as you know, and you may not know the full parameters of the record, but was there anyone who came in, paid for services, didn't get the services and said, hey, wait a minute, I'm not getting what I paid for, give me my money back. Do you know if that situation arose? My understanding is there's no situation where that arose. There were instances where individuals came – so what happens is you apply first and then you pay the tuition after the fact. There were people between – After effect. After you had gotten accepted or whatever and affirmed that you want to participate, then you pay the tuition amount. So there's a succession of phases. When you say affirmed you wanted to participate, did you affirm you wanted to participate for educational services or did you affirm you wanted to participate as part of a pay-to-stay scheme? It's usually the recruiter coming to the university saying, hey, my client needs these visa papers. And they are – either they've paid the tuition or they are going to pay the tuition. And so that's sort of the trigger. But there were individuals that sort of fell between. They had applied. They got, you know, the acceptance – I'm using air quotes, acceptance papers. And then they came back to the university and said, I don't want to do this. And what happened at that point is agents directed them to the proper places. Is there any – some of this is online advertisements or something from the University of Farmington, right? Correct. And is there anything in those online – or not online – statements from the University of Farmington that say anything about, you know, money is refundable if classes are not available? I'm not aware. I'm not aware of that verbiage being used. Okay. Just curious. Okay. I can see why that might be helpful. Interesting fact. I don't know that it was used here. I don't – again, I haven't, like, scoured the website to know whether that language exists. My time is up. I don't know if there are any final questions. Do you have a closing comment? Yeah. We respectfully request the Court affirm the judgment of the trial court. Thank you, Counsel. Ms. Nicholson has some rebuttals. Your Honors, the logic forwarded by the government would not allow a narrow holding. If this educational contract is found to be sovereign, the government could also rent a building and only in its head say we're not going to pay this and this is part of an undercover law enforcement operation and advance the same exact argument that it's sovereign. I think Mr. O would say that that's different. He would say that's a contract for the building as involving in the case for the prison. And that's something where under Kanye the government steps off its sovereign throne and participates in the marketplace as any other individual or corporation would. So I think he would distinguish that. Well, from my study of the Farmington operation, the students acquired were kind of the background, much like a building, and recruiters were actually the criminal target. So that's why I don't think we can let only the government after the fact fill out what its sovereign purpose was. But it has to be a factual analysis. And we have to see when there's a contract for educational services, which would normally be a proprietary contract, that's where we start. Furthermore, on these factual issues around classes and attending classes, Robbie contacted the university multiple times asking where the classes were. He tried to transfer away from the university and DHS would not block his transfer. And the affidavits we submitted showed that many students went through that. They tried to transfer once classes did not materialize and the government had control over them at that time, and they did not let them transfer. What do you mean the government had control over them and didn't let them transfer? So you cannot transfer from a university unless the university officials of your current school authorize that transfer. The government, pretending to be the university, had control. Yes, so once the students signed up for classes, they asked the school where the classes were again and again, and many of them tried to transfer away and were blocked by the government. So they really were looking to take classes. Your time has expired. Do you have a final thought? Yes, Your Honor. The Tugger Act was created to promote trust in contracts, and this would be undermined by adopting an interpretation of Sovereign Capacity Doctrine that locks the courthouse doors from contracts with the federal government based on circumstances of which the contractors had no knowledge whatsoever in forming a contract. Mr. Robby and hundreds of other students thought they were signing up for a full education including CAT classes and paid collectively $6 million of tuition. In speaking with dozens of Farmington students, they and their families are still financially struggling from this loss. They are still struggling. That is more than a final thought. I think we have your argument and the case is submitted. Okay, we respectfully ask that you reverse your amendment. Thank you.